RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 9/29/11
BY gkr

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| BRANDON FRANCIS | CIVIL ACTION NO. 1:08-cv-0067 |
| -vs- | JUDGE DRELL |
| TIM WILKINSON, et al. | MAGISTRATE JUDGE KIRK |

## REASONS FOR JUDGMENT

Before the Court for decision after trial on the merits is a civil rights action brought by the Plaintiff, Brandon Francis. A one-day bench trial in this matter was held on December 20, 2010. The Court's jurisdiction is based on 28 U.S.C. §§ 1331 and 1343. After carefully reviewing the evidence on the record and presented at trial, the Court's findings are as follows.

I.  Background

This civil rights suit was filed on January 15, 2008. In his original Complaint, Mr. Francis claimed Winn Correctional Center ("WCC") officials, Warden Tim Wilkinson, Officer Clifford Brown, and Lieutenant Mattox failed to protect him from attack by another inmate. Specifically, Francis alleges that on October 25, 2007, Lt. Mattox opened the cell doors for recreation time on the C-2 Tier of the "Cypress" unit and inmate John Harold ran into Francis' cell and attacked him, causing Francis injury, requiring stitches in his left ear and above his right eye. (Doc. 1).

According to the evidence, at the time of their state court trial, Harold and Francis were co-defendants, and Francis testified against Harold. Francis claims he told Officer Brown he did not feel safe around Harold and he did not want to be moved to a tier with Harold. Francis requested to be transferred to another institution.[1] Based upon what he says were failings by these officers in preventing the attack, he seeks $8.5 million for his pain, suffering, and mental anguish.

On February 27, 2008, the magistrate judge ordered Francis to amend his Complaint to reflect the following: (1) A description of what each defendant did to violate Francis' rights; and (2) a description of what injuries Francis suffered, the dates on which he received medical treatment, and what treatment he received. (Doc. 5).

Francis thus filed an Amended Complaint (Doc. 6) on March 24, 2008, alleging details that he spoke personally with Tim Wilkinson and asked to be placed in protective custody because he feared Harold would harm him. Francis further alleged Wilkinson refused to place Francis in protective custody, called Francis a "liar," and accused Francis of trying to get out of work duty. When Francis was to be moved from tier C-1 to tier C-2 within the "Cypress" unit, Francis asserted he told Officer Brown he could not be moved because Harold was housed there as well. Francis alleged he also spoke with Lt. Mattox about not wanting to be moved to the tier with Harold. Francis further charged that Lt. Mattox told him he would have to move there

---

[1] Mr. Francis is currently incarcerated at David Wade Correctional Center, therefore his request for a transfer is moot.

because it was the only cell available. Finally, Francis claimed Harold ran into his cell and attacked him when the cell doors on tier C-2 were opened for recreation time.

II. Legal Standards

    A. Section 1983

This lawsuit was brought under 42 U.S.C. § 1983, which provides, in full, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a viable claim under 42 U.S.C. § 1983, "'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" James v. Tex. Collin County, 535 F.3d 365, 373 (5th Cir. 2008) (quoting Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000)). Because § 1983 contemplates violations of both constitutional and statutory mandates, "'a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*.'" Equal Access for El Paso, Inc. v. Hawkins, 509 F.3d 697, 702 (5th Cir. 2007) (quoting Blessing v. Freestone, 520 U.S. 329, 340 (1997) (emphasis in original)).

3

Deliberate indifference is a cognizable theory of liability under § 1983. E.g., Longoria v. Texas, 473 F.3d 586 (5th Cir. 2006).

### B. Deliberate Indifference

The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined." Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002)(citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). Furthermore, "[i]t is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." Longoria v. Texas, 473 F.3d 586, 592 (5th Cir. 2006)(citing Farmer, 511 U.S. at 832–33). For an inmate to succeed on a claim for failure to prevent harm, he must show that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) the prison official was "deliberately indifferent" to the inmate's health or safety. Farmer, 511 U.S. at 834.

"Deliberate indifference" is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. Id. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. A negligent official will not be liable under this standard. The official's subjective knowledge of the risk to the inmate is a question of fact. Id. at 842. However, prison officials who "actually knew of a substantial risk to inmate health and safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Deliberate indifference will not be found where an official "*should have*" inferred a risk posed to an inmate; rather, there must exist proof that the official "*did* draw such an inference." Adames v. Perez, 331 F.3d 508, 514 (5th Cir. 2003) (italics in original). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Farmer, 511 U.S. at 842. It should be noted that if an inmate

> presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Id. at 842–43 (internal quotations and citations omitted). Accordingly, the inquiry turns on the official's subjective knowledge of the potential risk posed to the inmate.

III. Discussion

Based on the evidence in the record and the testimony presented at trial, we find Mr. Francis failed to prove the defendants were deliberately indifferent to his health or safety. Therefore, Defendants are not liable to Francis for his injuries sustained from the incident with Harold.

Francis and a fellow inmate, Lucas McLaughlin, were the only witnesses who testified Francis spoke with any one of the three named defendants about his fear of Harold. Officer Brown, Lt. Mattox, and Mr. Wilkinson stated they did not recall having a conversation with Francis wherein he communicated to them this fear. The

5

defendants also stated that, had they learned of such a fear, they would have contacted their direct supervisor (Wilkinson being excepted as he was warden and ultimate decision maker) in accordance with Corrections Corporation of America ("CCA") Policy #10-100. CCA is the corporate entity that runs WCC.

Mr. Francis' testimony at trial was consistent with the allegations of his amended complaint (Doc. 6) concerning his various conversations with prison personnel. Specifically, Francis testified he told each of the defendants he could not be on the same tier as Harold because they had been co-defendants and he had testified against Harold.[2] Francis also submitted the affidavit of McLaughlin in which McLaughlin swore he overheard Francis tell Wilkinson of his fear about Harold because Francis had testified against his co-defendant Harold. McLaughlin's testimony at trial was consistent with this affidavit, but it was also revealed that Francis prepared and delivered this affidavit for McLaughlin to sign. These facts raise credibility concerns as to the truth of the assertions in the affidavit and to McLaughlin's trial testimony.

Although Francis asserted he told the three officials about his fear of Harold, Francis never listed Harold on his prison "Enemy Protection History," nor was his past affiliation with Harold documented on any of his personal forms.[3] Francis insisted his fear of Harold was not listed on any forms because Francis entered WCC

---

[2] According to Mr. Francis, the conversation with Mr. Wilkinson took place on October 24, 2007 (the date on the Complaint was October 4th, 2007 and this Court accepts the October 4, 2007 date as being a typographical error). Francis did not provide a date for the alleged conversations with Officer Brown or Lt. Mattox.

[3] In this institution, apparently like others, an inmate can designate "enemies." The designation triggers efforts by the institution to segregate the individuals, ostensibly to avoid incidents.

in 2005–two years prior to Harold's arrival. However, Mr. Lewis Armstrong, a prison official, testified inmates were specifically asked about their enemies and gang relationships before they were moved to the "Cypress" unit where the C-2 tier was located. Armstrong stated Francis had been moved to tier C-2 because Francis threatened to go on a hunger strike and required observation. Armstrong testified he would be able to observe Francis from Armstrong's office and the medical staff could check on Francis if he was moved to tier C-2. Francis denied at trial that he threatened to go on a hunger strike, but it was contemporaneously reported on the "Segregation Confinement Record"(Exhibit D) that Francis stated he was going on a hunger strike on October 24, 2007.

Based on the evidence and testimony, Mr. Francis is unable to prove the defendants had knowledge Harold posed a potential risk to Francis' health or safety. Francis was moved to tier C-2 for the legitimate purpose of being monitored after threatening to harm himself by a hunger strike. Even had the officials known of Francis' alleged fear of Harold, the actions taken by the officials do not rise to the level of deliberate indifference. By Francis' own admission, the doors on the C-2 tier were all opened at the same time for recreation period, and Harold snuck into Francis' cell and attacked him. Each of the defendants testified they were not warned by Francis about his fear of Harold prior to the incident. No mention of an enemy relationship with Harold was indicated on any of Francis' prison forms. Finally, Harold had only been at WCC for three days before the incident. Francis was unable to present "evidence showing that a substantial risk of inmate attack [Mr. Harold]

7

was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." Farmer, 511 U.S. at 842. An appropriate judgment in accord with these reasons will be signed.

SIGNED on this 29th day of September, 2011 at Alexandria, Louisiana.

```
                              Dee D. Drell
                         United States District Judge
```